## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES E. WATTS,                    )
                                     )
                    Petitioner,      )
                                     )
          v.                         )        1:09CV206
                                     )
ADMINISTRATOR SANDRA F. THOMAS,      )
                                     )
                    Respondent.      )

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On June 13, 2003, in the Superior Court of Scotland County, Petitioner was convicted of the statutory rape of a thirteen-year-old girl in case 01CRS1837.  He was sentenced to 360 to 441 months of imprisonment, a sentence which fell into the aggravated sentencing range under North Carolina's sentencing laws.  Petitioner did file a direct appeal.  The North Carolina Court of Appeals upheld his conviction, but reversed and remanded the case after concluding that the aggravated sentence was error under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). Before that order could take effect, it was stayed at the State's request by the North Carolina Supreme Court, which later remanded the case to the North Carolina Court of Appeals for review in light of later cases.  The Court of Appeals then issued a second opinion finding no prejudicial error.  Discretionary review was denied by the North Carolina Supreme Court, while certiorari was later denied by the United States Supreme Court.

<u>State v. Watts</u>, 172 N.C. App. 58, 616 S.E.2d 290, <u>vacated</u> <u>in</u> <u>part</u> <u>and</u> <u>remanded</u> <u>by</u>, 361 N.C. 161 (2005), <u>opinion</u> <u>after</u> <u>remand</u>, 185 N.C. App. 539, 648 S.E.2d 862, <u>rev.</u> <u>denied</u>, 361 N.C. 702, 655 S.E.2d 400 (2007), <u>cert.</u> <u>denied</u>, ___ U.S. ___, 128 S.Ct. 1719 (2008). Petitioner then brought his habeas petition in this Court.

Currently, there are two motions pending in this case. One is a motion for summary judgment by Respondent, while the other is a motion by Respondent to supplement the briefing in light of a recent decision by the United States Supreme Court. Both parties have filed supplemental briefs addressing the impact of that decision on this case. Therefore, Respondent's motion to supplement will be granted and all of the supplemental briefs will be considered. Only the summary judgment motion remains for further discussion.

### Facts

The basic facts of the case, as set out by the North Carolina Court of Appeals in its initial opinion, are as follows.

> Upon the verdict of a jury, Defendant was convicted of raping a thirteen-year-old female ("the minor") and sentenced to 360 to 441 months imprisonment without parole. The record reflects that the minor moved to North Carolina with her father in 2000 after her parents separated. Defendant, Charles Eugene Watts, is related to the minor. The minor began working for Defendant at his garage because her father was sick, his income was low, and the minor needed things for school. At the time, the minor was thirteen years old; Defendant was forty-seven.

> At trial, the minor provided the following testimony: Defendant began sexually assaulting her soon after she started working for him. Defendant kissed her, put his fingers into her vagina, and then raped her twice a day every weekday. Before Defendant raped her, the minor had not had sexual intercourse with anyone. Defendant told

the minor that he would hurt her and her family if she told anybody.

On 7 September 2000, while driving the minor to school, Defendant grabbed the back of her head, pushed it into his lap, and forced her to perform oral sex on him. Defendant then drove to his garage, where he again raped the minor before taking her to school. She took the bus home from school, showered, and visited a neighbor, Susan Butler. She told Ms. Butler what had been happening. Testimony at trial established that Ms. Butler immediately talked to the minor's father; he, along with the minor and Ms. Butler, went to the police.

Thereafter, the police sent the minor to the hospital, where her underwear and physical samples were taken. A pregnancy test was administered, with a positive result. The treating obstetrician-gynecologist estimated the time of conception to be somewhere between 9 August and 19 August, during which time the minor was allegedly being raped by Defendant. The fetus was not viable, and an evacuation was performed. The products of conception extracted during the evacuation were preserved and picked up by the police.

Defendant consented to giving a blood sample. He contended that he was sterile, denied having any sexual contact with the minor, contended that the minor had a bad reputation, and accused the minor of making sexual advances toward him.

Defendant was arrested and tried for statutory rape of a thirteen-year-old victim at the 10 June 2003 session of Superior Court, Scotland County. During the trial, the physician who performed the evacuation was asked to identify the products of conception, which were "leaking somewhat." The trial court interrupted the examination, asking that the products be put in a cooler and a lid be placed on the cooler. The trial court recessed for five minutes in order for the bailiff to get "spray" and the trial judge then stated, "For the record State's Exhibit Number 35 has a very unpleasant odor[.]" Thereafter, a forensic DNA analyst who had examined the products of conception and blood samples of Defendant and the minor testified at trial that the probability of Defendant's paternity was 99.99 percent. Special Agent David Freeman, a forensic molecular geneticist with the State Bureau of Investigation, also testified at trial. He discussed DNA analysis conducted primarily by a colleague who was on vacation. Special Agent Freeman testified, inter alia, that the profile from the male fraction of the DNA taken from the minor's underwear was 4.48 million trillion

-3-

times more likely to be from Defendant than from another unrelated individual within North Carolina's Caucasian population, 17.3 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's African-American population, 5.59 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's Caucasian Lumbee Indian population, and 20.7 million trillion times more likely to be from Defendant than from another unrelated individual within North Carolina's Hispanic population. Special Agent Freeman testified that, in his opinion, it was scientifically unlikely that the semen found on the minor's underwear originated from anyone other than Defendant.

<u>Id.</u> at 59-62, 616 S.E.2d at 292-93.

## **Petitioner's Claims**

Petitioner has raised three claims for relief in his petition. The first of these is that the introduction of the leaking bag containing the products of conception was an evidentiary error which rendered his trial fundamentally unfair. The second is that the trial court violated Petitioner's right to confront the witnesses against him when it allowed Special Agent Freemen to testify as to the DNA results reached by his colleague, Special Agent Bissette. Finally, Petitioner objects to the imposition of a sentence in the aggravated sentencing range. The aggravating factor used to impose the sentence was that Petitioner committed the rape while on pretrial release for another charge. Petitioner contends that this violated his right to be presumed innocent on the other charge.

## **Standards of Review**

If the Court finds that Petitioner's claims were adjudicated by the state courts on their merits, it must then apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to Petitioner's

-4-

claims. That statute states that habeas relief cannot be granted in cases where a state court has considered a claim on its merits unless the decision was contrary to, or involved an unreasonable application of, clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. "Unreasonable" is not the same as "incorrect" or "erroneous" and the reasonableness of the state court's decision must be judged from an objective, rather than subjective, standpoint. Id. at 409-411. A holding is not reasonable simply because precedent written by one of the Nation's jurists agrees with it. Id. at 410. As for questions of fact, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, Petitioner did raise at least some form of his claims on direct appeal. The North Carolina Court of Appeals issued written

-5-

decisions discussing those claims. Therefore, the deferential standards of review just discussed will apply to Petitioner's claims.

## Discussion

### Claim One

Petitioner's first claim for relief alleges that his rights were violated by the admission into evidence of the leaking "products of conception." He contends that the evidence was irrelevant to prove any of the elements of the charges against him. The fetus was conceived in early to mid-August of 2000, while the rape charged in the indictment was alleged to have occurred on September 7, 2000. Petitioner argues that the evidence was admitted only to damage his character. Petitioner additionally argues that the gruesome nature of the leaking exhibit was so inflammatory that it rendered his entire trial fundamentally unfair.

A habeas petitioner challenging the admission of evidence faces significant challenge. "Normally, the admissibility of evidence, the sufficiency of evidence, and instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." Grundler v. State of North Carolina, 283 F.2d 798, 802 (4th Cir. 1960). This holding was recently reaffirmed by the Fourth Circuit in Barbe v. McBride, 521 F.3d 443, 453 (4th Cir. 2008). When this

-6-

standard is considered along with the standard of review already set out above, the task of succeeding on an evidentiary error claim is quite daunting.

Both the North Carolina and federal rules of evidence generally allow the admission during sexual assault trials of evidence relating to prior sexual assaults, even uncharged assaults, committed by a defendant. See United States v. Seymour 468 F.3d 378, 383-384 (6th Cir. 2006); State v. Harris, 111 N.C. App. 445, 432 S.E.2d 415 (1993); State v. Davis, 101 N.C. App. 12, 398 S.E.2d 645 (1990). Thus, in the present case, the victim's testimony that Petitioner routinely assaulted her prior to the assault actually charged was admissible. Testimony related to the "products of conception," i.e., DNA testimony indicating that Petitioner was the father of the dead fetus, was relevant to support the victim's testimony on this issue. It is true that the "products of conception" themselves were not directly probative on this point. However, they were admitted as part of establishing the chain of custody leading to the DNA analysis; a chain to which Petitioner's counsel did not stipulate. Watts, 172 N.C. App. at 71, 616 S.E.2d at 299. For these reasons his relevance argument fails.

Petitioner's arguments concerning the inflammatory nature of the evidence also fail. There is no question that the nature of the exhibit and its unfortunate leakage was gruesome. The North Carolina Court of Appeals described the leakage incident as "troublesome" and "inflammatory." Id. at 70-71, 616 S.E.2d at 298-

-7-

299.  Still, as that court also pointed out, even if there was an error, Petitioner suffered no prejudice.  The evidence against him in the form of the victim's testimony, combined with the DNA testimony tying Petitioner to both the semen found in the victim's underwear and the fetus he fathered during a prior assault, presented an overwhelming case of guilt.  However troublesome the leakage incident itself may have been, it did not render Petitioner's trial fundamentally unfair given the strength of the case against him.  This also means that the North Carolina Court of Appeals' rejection of Petitioner's claim was not contrary to or an unreasonable application of established Supreme Court precedent.  Petitioner's first claim for relief should be denied.

### Claim Two

Petitioner's second claim is that Special Agent Freeman's testimony concerning his colleague's conclusions violated Petitioner's rights under the Confrontation Clause.  Again, Petitioner faces a heavy burden due to the interaction between federal habeas law regarding state evidentiary issues and § 2254's heightened standards of review.  As the Fourth Circuit has explained, there is a two-step analysis for such claims:

> Under the first step of the AEDPA analysis, we may award relief only if (a) the state court adjudication of the issue on its merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (b) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). And, even if error is identified, habeas corpus relief can only be granted, under the second step of the AEDPA analysis, if the error had a

> "substantial and injurious effect or influence in
> determining the jury's verdict." <u>Brecht v. Abrahamson</u>,
> 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)
> (internal quotation marks omitted); <u>see also</u> <u>Delaware v.</u>
> <u>Van Arsdall</u>, 475 U.S. 673, 684, 106 S.Ct. 1431, 89
> L.Ed.2d 674 (1986); <u>Fullwood v. Lee</u>, 290 F.3d 663, 679
> (4th Cir.2002).

<u>Barbe</u>, 521 F.3d at 453.

The North Carolina Court of Appeals noted that the challenge
to Freeman's testimony was raised under <u>Crawford v. Washington</u>, 541
U.S. 36 (2004). It therefore analyzed the claim under that case
and under state law relying on <u>Crawford</u>[1] saying:

> In <u>State v. Delaney</u>, 171 N.C. App. 141, 613 S.E.2d 699
> (2005), this Court determined that a defendant's right to
> confrontation was not violated where an expert in
> analyzing controlled substances relied on a non-present
> chemist's analyses in forming his expert opinion and
> testified regarding those analyses. This Court stated:
>
>> Since it is well established that an expert
>> may base an opinion on tests performed by
>> others in the field and Defendant was given an
>> opportunity to cross-examine [the expert] on
>> the basis of his opinion, we conclude that
>> there has been no violation of Defendant's
>> right of confrontation under the rationale of
>> <u>Crawford</u>.
>
> <u>Id.</u> at 296, 613 S.E.2d at 701. And in another recent
> case, <u>State v. Walker</u>, 170 N.C. App. 632, 613 S.E.2d 330
> (2005), this court found that the testimony of an expert
> as to a forensic firearms report conducted by another and
> admission of such report did not violate a defendant's
> right to confrontation and stated "where the evidence is
> admitted for, inter alia, corroboration or the basis of
> an expert's opinion, there is no constitutional
> infirmity." <u>Id.</u> at ----, 613 S.E.2d at 333 (citations
> omitted).

---

[1]Although the North Carolina Court of Appeals engaged in its analysis of
the case under <u>Crawford</u>, the parties have both briefed the possible impact of the
recently decided case of <u>Melendez-Diaz v. Massachusetts</u>, ___ U.S. ___, 129 S.Ct.
2527 (2009). While they disagree as to how that case is the same as or different
from the present case, they do agree that <u>Crawford</u> is the controlling precedent
in deciding the matter.

> For the reasons stated in Delaney and Walker, Special
> Agent Freeman's using results of a DNA analysis conducted
> by a colleague to form the basis of his expert opinion
> and related testimony about that analysis did not violate
> Defendant's right of confrontation.

State v. Watts, 172 N.C. App. at 66, 616 S.E.2d at 296-97 (2005).

It is important in reviewing Petitioner's claim to note that Freeman's testimony, as well as Petitioner's attacks on that testimony, can be divided into two separate areas. The first of these is Freeman's expert opinions based on Agent Bissette's findings. Freeman testified extensively at Petitioner's trial. Most of the testimony consisted of his own testimony about lab procedures, the tests that Bissette had conducted, whether she had followed correct procedures, and his opinion concerning the results of those tests. Petitioner's attorney was free to cross-examine Freeman on all of these points and he did cross-examine him at length. Petitioner now characterizes Freeman's opinions which were based on Bissette's work as incorrect, invalid, unsupported, etc. However, these arguments really go to the weight of Freeman's testimony, not its admissibility under the Confrontation Clause.[2] Therefore, they are not germane to the Confrontation Clause question that has been raised in the petition.

Further, when Petitioner's arguments against the admission of Freeman's own opinions and analysis of Bissette's findings are considered in light of the law governing Confrontation Clause questions, they easily fail. As Respondent points out, following

---

[2]Any such problems with Freeman's testimony could have been raised to the jury at trial.

-10-

<u>Crawford</u>, courts have allowed an expert witness to give an opinion based on the work of another person even if the other person is not available for cross-examination at trial. <u>See</u>, <u>e.g.</u>, <u>United States v. De La Cruz</u>, 514 F.3d 121 (1st Cir. 2008)(medical examiner could testify as to his opinion on a cause of death when opinion was based on an autopsy report prepared by another person); <u>United States v. Moon</u>, 512 F.3d 359, 360 (7th Cir.)(experts can base opinion on inadmissible evidence), <u>cert.</u> <u>denied</u>, ___ U.S. ___, 129 S.Ct. 40 (2008); <u>Howard v. Walker</u>, 406 F.3d 114, 126-27 (2d Cir. 2005)(experts can generally testify as to opinions based on hearsay and other inadmissible evidence where a defendant can cross-examine the expert about the reliance).  To a great extent, this describes Freeman's testimony in the present case.  Such testimony was not a problem for the reasons set out by the North Carolina Court of Appeals.

Although most of Freeman's testimony was either general explanation of DNA testing or his expert opinion based on Bissette's work, this is not entirely true.  At one point, in response to a question from the prosecutor concerning the results of Bissette's findings, Freeman read three paragraphs of her conclusions into the record from her lab notes.  He then appears to have returned to testifying from his own knowledge or about his opinions based on Bissette's findings.  (Docket No. 7, Vol. II. at 61-62.)

The reading of Bissette's report might pose a closer question under the Confrontation Clause.  However, even if Petitioner could

-11-

show that a violation occurred based on these statements, he still would not prevail. These statements were a very minor part of Freeman's overall testimony. Even as to the part of Bissette's report that was read into evidence by Freeman, the defense attorney had the chance to examine Freeman regarding any problems or deficiencies he might see in the report. It cannot be said that the error has a "substantial and injurious effect or influence in determining the jury's verdict." As with the leaking exhibit discussed in claim one, any problematic portion of the testimony was only a small part of the overall presentation. The real evidence against Petitioner was the victim's testimony, corroborated by the DNA test showing that he fathered the dead fetus, and Freeman's expert opinion based on Bissette's testing that DNA testing showed Petitioner to be the source of the semen in the victim's underwear. Bissette's report was cumulative in light of the other evidence. Petitioner was not prejudiced by its introduction as part of Freeman's testimony. Therefore, the North Carolina Court of Appeals' denial of his appeal was not contrary to, or an unreasonable application of, the applicable Supreme Court precedent. Petitioner's second claim for relief should be denied.

## Claim Three

Petitioner's final claim for relief is also without merit. He alleges that his constitutional right to a presumption of innocence was violated when he was given a sentence in the aggravated range based on the fact that he was on pretrial release for another charge at the time he raped the victim in this case. He maintains

that the sentence violated the presumption of innocence as to the other charge.

This claim fails on its face. Petitioner was not found or presumed to be guilty of the other charge. Nor was he punished for the other charge. He was punished only for the rape in the instant case. The fact that his present punishment was increased by his pretrial release status meant nothing as to the other charges in the other case. His guilt or innocence of those charges was also absolutely irrelevant to the present case. The sentence was imposed based on his status alone. This claim for relief should be denied.

**IT IS THEREFORE ORDERED** that Respondent's motion to supplement the briefing (docket no. 12) is granted.

**IT IS RECOMMENDED** that Respondent's motion for summary judgment (docket no. 5) be granted, that the habeas petition (docket no. 1) be denied, and that Judgment be entered dismissing this action.

　　　　　　　　　　　　　　/s/ Donald P. Dietrich
　　　　　　　　　　　　　　**Donald P. Dietrich**
　　　　　　　　　　　**United States Magistrate Judge**

September 25, 2009